Judge Tana Lin

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR25-002 |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| TOMMY PHAM, | |
| Defendant. | |

The United States, through Assistant United States Attorneys Casey S. Conzatti and Brian J. Wynne of the Western District of Washington and Tommy Pham and Pham's attorney Emma Scanlan enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.    **Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in a superseding Information.

2.    **The Charges.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the superseding Information.

Plea Agreement - 1
*United States v. Pham*, CR25-002 TL

a.    Conspiracy to Distribute Controlled Substances, as charged in Count 1 of the superseding Information, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), 846 *are* SLV

b.    Possession a Firearm in Furtherance of a Drug Trafficking Crime, as charged in Count 2 of the superseding Information, in violation of Title 18, United States Code, Section 924(C)(1)(A)(i).

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3.    **Elements of the Offenses.** The elements of the offense(s) to which Defendant is pleading guilty are as follows:

a.    The elements of Conspiracy to Distribute Controlled Substances, as charged in Count 1 of the superseding Information, are as follows:

i.    *First*, beginning at a time unknown, but within the past five years, and continuing until on or about ~~May 29,~~ January 13 2025, there was an agreement between two or more persons to distribute controlled substances including methamphetamine, cocaine, and fentanyl; and

ii.    *Second*, Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose:

b.    The elements of Possession a Firearm in Furtherance of a Drug Trafficking Crime, as charged in Count 2 of the superseding Information, are as follows:

Plea Agreement - 2
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i. *First*, Defendant committed the crime of Conspiracy to Distribute Controlled Substances, as charged in Count 1 of the superseding Information, which is a drug trafficking crime; and

ii. *Second*, Defendant knowingly possessed a firearm; and

iii. *Third,* Defendant possessed the firearm in furtherance of that drug trafficking crime.

4. **The Penalties.** Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a. For the offense of Conspiracy to Distribute a Controlled Substance, as charged in Count 1 of the superseding Information: A maximum term of imprisonment of up to 40 years and a mandatory minimum term of imprisonment of five years, a fine of up to $5,000,000.00, a period of supervision following release from prison of at least four years, and a mandatory special assessment of $100.00.

b. For the offense of Possession a Firearm in Furtherance of a Drug Trafficking Crime, as charged in Count 2 of the superseding Information: A maximum term of imprisonment of life and a mandatory minimum sentence of five years, which must be served consecutively to any other sentence; a fine of up to $250,000.00; a period of supervision following release from prison of up to five years; and a mandatory special assessment of $100.00.

**Offense - Proof of Drug Quantity for Mandatory Minimum.** Defendant further understands that, in order to invoke the statutory sentence for the drug offense for Count 1, the United States must prove that Defendant's conduct as a member of the narcotics conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count 1, involved five grams or more of methamphetamine, its salts, isomers, and salts of its isomers, 50 grams or more of a mixture or substance containing a detectible amount of methamphetamine, its salts,

Plea Agreement - 3
*United States v. Pham*, CR25-002 TL

isomers, or salts of its isomers, or 40 grams or more of a mixture or substance containing a detectable amount of fentanyl. Defendant expressly waives the right to require the United States to make this proof at trial and stipulates as a part of this plea of guilty that the offense charged in Count 1, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count 1, involved more than five grams or more of methamphetamine, its salts, isomers, and salts of its isomers, 50 grams or more of a mixture or substance containing a detectible amount of methamphetamine, its salts, isomers, or salts of its isomers, and 40 grams or more of a mixture or substance containing a detectable amount of fentanyl.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Plea Agreement - 4
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

5.    **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States, or may have consequences with respect to citizenship status if Defendant is a naturalized citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. In some instances, a criminal conviction may be grounds for revocation of naturalized citizenship status. Removal, de-naturalization, and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration or naturalized citizenship status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any consequences that Defendant's guilty plea(s) may entail, even if the consequence is Defendant's removal from the United States or loss of naturalized citizenship.

6.    **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

a.    The right to plead not guilty and to persist in a plea of not guilty;

b.    The right to a speedy and public trial before a jury of Defendant's peers;

c.    The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d.    The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

Plea Agreement - 5
*United States v. Pham*, CR25-002 TL

e.    The right to confront and cross-examine witnesses against Defendant at trial;

f.    The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g.    The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h.    The right to appeal a finding of guilt or any pretrial rulings.

7.    **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

Plea Agreement - 6
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Case 2:25-cr-00002-TL    Document 148    Filed 02/25/26    Page 7 of 19

c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

8.    **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

9.    **Statement of Facts.** Defendant admits Defendant is guilty of the charged offenses. The parties agree on the following facts:

a.    Beginning at a time unknown, and continuing until at least January 13, 2025, the defendant, Tommy Pham, conspired with others known and unknown to distribute controlled substances, including methamphetamine, heroin, cocaine, and fentanyl within the Western District of Washington.

b.    The conspiracy, and Pham's role as a source of supply and leader in this Drug Trafficking Organization (DTO), is established by court-authorized interception of wire and electronic communications; surveillance; seizures of drugs and cash; search warrants; and other evidence, only some of which is outlined below.

c.    As a source of supply for controlled substances for this DTO, Pham supplied other members of the DTO with drugs and collected proceeds. Pham would contact other members of the DTO and arrange to meet with them to supply them with controlled substances in exchange for cash. Agents were aware of these meetings, and Pham's role in them, based on intercepted communications which occurred over cell phones used by Pham and his co-conspirators. Agents also observed Pham meet with redistributors throughout the investigation, consistent with intercepted communications.

Plea Agreement - 7
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.      On September 23, 2024, investigators intercepted a conversation between Pham and a co-defendant (hereinafter "co-conspirator #1"), where co-conspirator #1 requested "half" of a "*mai den*" [half an ounce of heroin].

e.      On September 24, 2024, investigators intercepted a conversation between Pham and a second co-defendant co-conspirator #2, where co-conspirator #2 asked if Pham had any "daytime" [methamphetamine]. Pham told co-conspirator #2 that he had to go home and grab it, to which co-conspirator #2 asked if Pham had any on him at the moment, "just a quarter or something" [quarter of an ounce]. Pham confirmed that he did and agreed to meet co-conspirator #2.

f.      On September 25, 2024, investigators intercepted a conversation between Pham and an unindicted co-conspirator (hereinafter "co-conspirator #3"). During the call co-conspirator #3 asked Pham for "one blue yacht" [one thousand fentanyl pills]. Pham responds that he did not have the full order, but would go home and get what he had.

g.      On September 27, 2024, investigators intercepted a call between Pham and co-conspirator #2. During the call co-conspirator #2 asked Pham for "three yetti" [three ounces of fentanyl]. Pham asks what type co-conspirator #2 wanted, and co-conspirator #2 asked for the price so that he could tell his customer and indicated that he wanted something that was not too expensive but not too cheap. Pham asked co-conspirator #2 if he wanted the "brown one" [unknown quality of fentanyl powder], and co-conspirator #2 responded that people did not like the "brown" one. Pham asked if people did not like the brown one and if co-conspirator #2 was having trouble "moving it" [selling it]. Co-conspirator #2 confirmed that his customers did not like it. Pham asked co-conspirator #2 what he had to do to make it better, and co-conspirator #2 responded that he did not know but that it was "hella bitter." Co-conspirator #2 asked Pham for the next grade up.

Pham told co-conspirator #2that he had not "touched it" [had not cut the fentanyl with additional additives]. The call ended with Pham telling co-conspirator #2that he would go home and check.

h.   On September 30, 2024, investigators intercepted communications between Pham and third co-defendant (hereinafter "co-conspirator #4"). Co-conspirator #4 indicated that he was looking to purchase an ounce and a half or two ounces of an unidentified substance. Co-conspirator #4 followed up with a text message telling Pham that he also wanted a "zip" "clear" [one ounce of methamphetamine]. Co-conspirator #4 and Pham agreed to meet later that day.

i.   Investigators surveilled the pre-arranged meet-up location and saw Pham meet with co-conspirator #4. After co-conspirator #4 entered and interacted with his Pham in Pham's vehicle, co-conspirator #4 left the meet-up location in the vehicle he arrived in. Investigators stopped the vehicle co-conspirator #4 was in and seized the vehicle

j.   After the stop of the vehicle, investigators intercepted several calls between Pham and co-conspirator #4 where co-conspirator #4 told Pham that he locked everything in the glove box of the vehicle. Investigators searched the vehicle co-conspirator #4 was stopped in pursuant to a search warrant and found approximately one ounce of fentanyl powder in the vehicle glove box and approximately one ounce of methamphetamine under the front passenger seat where co-conspirator #4 was sitting when the vehicle was stopped.

k.   On December 5, 2024, investigators intercepted a number of calls between Pham and fourth co-defendant (hereinafter "co-conspirator #5"). During one call co-conspirator #5 asked Pham to get the "samp" [sample of controlled substances] for him. Approximately an hour later, co-conspirator #5 told Pham to just "grab the whole thing" [a bulk quantity of the controlled substance]. Pham and co-conspirator #5 exchanged a series of communications where they eventually

Plea Agreement - 9
*United States v. Pham*, CR25-002 TL

agreed to meet at a specific location later that evening. Investigators surveilled the pre-arranged meet-up location. Investigators observed co-conspirator #5 in his vehicle at the location at approximately 8:12 p.m. At 9:10 p.m. Pham arrived at the location, exited his vehicle and walked towards co-conspirator #5's vehicle. co-conspirator #5 exited his vehicle at approximately the same time and walked towards Pham. Both co-conspirator #5 and Pham walked back to Pham's vehicle where they entered the vehicle and stayed for approximately four minutes. At approximately 9:20 p.m. investigators followed co-conspirator #5 to a second location where co-conspirator #5 met with an unindicted co-conspirator (hereinafter "co-conspirator #6") in co-conspirator #5's vehicle. Investigators observed co-conspirator #6 exit co-conspirator #5's vehicle and enter his own vehicle and drive away. Investigators stopped co-conspirator #6's vehicle two minutes after it left co-conspirator #5 and recovered one pound of methamphetamine. Pham admits that on December 5, 2024, he sold one pound of methamphetamine to co-conspirator #5, who then redistributed it to co-conspirator #6, and that this was in furtherance of the conspiracy charged in Count 1 of the superseding Information.

l.      On December 7, 2024, deputies with the King County Sheriff's Office ("KCSO") responded to a welfare check of vehicle at the 7600 block of S 120th Street, Skyway, WA. Pham was found to be slumped over the steering wheel of the vehicle. At the time of the interaction, Pham was in possession of a loaded 9mm Glock 19 with 15 rounds of ammunition, eight net grams of methamphetamine. Investigators also recovered $1,322 in United States currency. Pham admits that the Glock 19 facilitated his participating in the Conspiracy to Distribute Controlled Substances, and that the currency recovered was proceeds of, or was property used to facilitate, the Conspiracy to Distribute Controlled Substances.

Plea Agreement - 10
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

m.     On January 13, 2025, investigators executed a search warrant at Pham's residence located in Newcastle, WA. During the search of his residence, investigators located approximately one ounce of methamphetamine, one ounce of heroin, one ounce of cocaine, and three ounces of marijuana. Pham admits that he possessed these controlled substances and knowingly conspired and agreed with his co-conspirators to distribute them to others for profit. Investigators also recovered four firearms including a loaded Mossberg Model 510, an unloaded HK 416 LR Pistol, a loaded Beretta pistol, and an unloaded American Tactical Rifle. Pham further admits that the firearms, magazines, and ammunition recovered from the Newcastle residence were possessed by him in furtherance of the drug trafficking conspiracy and facilitated that conspiracy.

n.     On January 13, 2025, prior to the execution of the warrant at the Newcastle residence, Pham drove his 2007 Toyota Highlander (hereinafter the "Toyota Highlander") to the Tulalip Casino, where he was eventually arrested. Upon Pham's arrest, investigators seized $2,200.17 in U.S. currency from Pham's person, which he admits was proceeds of, or property used to facilitate, the drug trafficking conspiracy. After Pham's arrest, investigators searched the Toyota Highlander and recovered a black backpack. Inside the black backpack investigators recovered a loaded Kimber Micro 9 firearm, a taser, methamphetamine, and marijuana. Pham admits that the Kimber Micro 9 facilitated his participating in the Conspiracy to Distribute Controlled Substances.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

Plea Agreement - 11
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.    **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

a.    A base offense level of 30 as the relevant conduct involved at least 1,000 kilograms but less than 3,000 kilograms of converted drug weight pursuant to USSG §2D1.1(c)(5).

b.    A two-point increase as Pham was a leader in this organization, pursuant to USSG § 3B1.1(c).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11.    **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12.    **Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of imprisonment that is no higher than the low end of the sentencing guidelines as calculated by the Court at the time of sentencing. Defendant is free to make any recommendation permitted by law. Defendant understands that these recommendations are not binding on the Court and the Court may reject the recommendation of the parties

Plea Agreement - 12
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

13.    **Enhanced Penalty.** Pursuant to this Plea Agreement and conditioned upon Defendant's fulfillment of all its terms and conditions, the United States agrees not to file an enhanced penalty information alleging Defendant's prior felony drug conviction pursuant to 21 U.S.C. § 851.

14.    **Forfeiture of Assets.** Defendant understands the forfeiture of property is part of the sentence that must be imposed in this case.

Defendant agrees to forfeit to the United States immediately all of his right, title, and interest in any and all property, real or personal, that was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of *Conspiracy to Distribute Controlled Substances*, the offense set forth in Count 1 of the Indictment, and any property constituting, or derived from, any proceeds Defendant obtained, directly or indirectly, as the result of this offense. This property is subject to forfeiture pursuant to Title 21, United States Code, Section 853(a), and includes the following items referenced in paragraph 9:

a.    a Glock 19 9mm pistol and approximately 15 rounds of associated ammunition, seized from TOMMY PHAM on or about December 7, 2024;

b.    approximately $2,200.17 in U.S. currency, seized from TOMMY PHAM on or about December 7, 2024;

c.    a Kimber Micro 9 pistol and associated ammunition, seized from TOMMY PHAM's 2007 Toyota Highlander on or about January 13, 2025;

d.    approximately $1,322 in U.S. currency, seized from TOMMY PHAM on or about January 13, 2025;

Plea Agreement - 13
*United States v. Pham*, CR25-002 TL

e.   an American Tactical rifle and associated ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025;

f.   a Mossberg shotgun and associated ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025;

g.   an H&K rifle and associated ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025;

h.   a Beretta pistol and associated ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025; and

i.   approximately five boxes of ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025.

Defendant agrees to forfeit to the United States immediately all of his right, title, and interest in any firearms and ammunition that were involved in the commission of *Possession of a Firearm in Furtherance of a Drug Trafficking Offense*, the offense set forth in Count 2 of the Indictment. This property is subject to forfeiture pursuant to Title 18, United States Code, Section 924(d)(1), by way of Title28, United States Code, Section 2461(c) and includes the following items referenced in paragraph 9:

a.   an American Tactical rifle and associated ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025;

b.   a Mossberg shotgun and associated ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025;

c.   an H&K rifle and associated ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025;

d.   a Beretta pistol and associated ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025; and

Plea Agreement - 14
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.    approximately five boxes of ammunition, seized from TOMMY PHAM's Newcastle, Washington residence on or about January 13, 2025.

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any such property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated. Defendant also agrees he will not assist any party who may file a claim to this property in any federal forfeiture proceeding.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if said assets constitute or are derived from proceeds of, or were used or intended to be used to facilitate, *Conspiracy to Distribute Controlled Substances*, the offense set forth in Count 1 of the Indictment, or are firearms and ammunition involved in *Possession of a Firearm in Furtherance of a Drug Trafficking Offense*, the offense set forth in Count 2.

15.    **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

16.    **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the

Plea Agreement - 15
*United States v. Pham*, CR25-002 TL

conduct giving rise to this investigation, and will move to dismiss the original indictment against Pham at the time of sentencing. In this regard, Defendant recognizes the United States Attorney's Office for the Western District of Washington has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

17.   **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and/or (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant and/or to seek a sentence that takes such

conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

18.    **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable). This includes any procedural challenges to the sentence, including any claim that the procedure employed at sentencing violated Defendant's constitutional rights.

Defendant also agrees that, by entering the guilty plea(s) required by this Plea Agreement, Defendant waives any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation or a claim of prosecutorial misconduct based on facts unknown or not reasonably discoverable prior to entry of the judgment of conviction.

Defendant acknowledges that certain claims, including certain claims for prosecutorial misconduct, will be barred by operation of law by virtue of their guilty plea, independently from this Plea Agreement. This waiver does not preclude Defendant from

Plea Agreement - 17
*United States v. Pham*, CR25-002 TL

bringing an appropriate motion to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to claims not subject to the waiver, above) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

19. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

20. **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, or Defendant withdraws from this Plea Agreement after it has been accepted by the Court, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office; or (3) thirty days following the grant of a motion to withdraw from the Plea Agreement.

//

//

//

Plea Agreement - 18
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21.     **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 25th day of February, 2026

_____
TOMMY PHAM
Defendant

_____
EMMA SCANLAN
Attorney for Defendant

_____
VINCENT T. LOMBARDI
Assistant United States Attorney

_____
CASEY S. CONZATTI
BRIAN J. WYNNE
Assistant United States Attorneys

Plea Agreement - 19
*United States v. Pham*, CR25-002 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970